JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants Donald Ksiezyk and Doned, Inc.[1]
appeal from the trial court's order affirming the decision of the Cleveland Board of Zoning Appeals (BZA).[2] The property owned by the appellant is zoned general retail. The city denied appellant a permit to establish use as an Adult Cabaret and the appellant appealed first to the BZA, then to the Court of Common Pleas, and now to this court. At each administrative level, the city's decision to deny the permit has been upheld.
 {¶ 2} When the BZA sustained the decision of the Commissioner of Building and Housing it issued the following ruling:
 {¶ 3} "The evidence presented establishes that the property in question was placed in zoning for a Retail Business District in 1929; that the Commissioner of Building and Housing was not capricious nor arbitrary in citing the appellant under Sections[3] 347.07(1), 347.07(2), 347.07(2)(A), 347.07(4), 347.07(5) and 347.07(6); that the appellant's proposal to establish a use as an Adult Cabaret is not a permitted use in General Retail District but subject to the Enforcement and Penalty Requirements of Section 327.99 and 327.03 and the Jurisdiction and Power of Section 329.02 of the Codified Ordinances; that several neighboring property owners expressed their opposition to the appellant's appeal both in writing and by testimony at the hearing; that the Council representative and the local development corporation are also opposed to the use as proposed herein."
 {¶ 4} The transcript of the hearing held before the BZA indicates that the parcel of land at 3129 West 25th Street is owned by the appellant. The business operating on the land is a bar known as Peek-A-Boos which features "sophisticated, female, topless dancing performances". (BZA T. 9). The appellant presented the testimony of Cleveland Police Commander Robert Taskey. Commander Taskey testified that from 1978 to 1981 the bar was "strictly a bikini class dancer's club", but that it was cited three times for topless dancing (BZA T. 38). The citations were issued under the state liquor law in effect at the time which prohibited such activity. Frank Bobosky, a resident of the neighborhood for over forty years, testified that there has been topless dancing at the bar since the latter part of the 1970's or the early 1980's. Mr. Ksiezyk testified that he purchased the real estate and the business in 1980, but that he was the day-shift manager for the prior owner between 1978 and 1980. He stated that female topless dancing started at the bar in 1976 (BZA T. 49). He opined that a string bikini could be considered topless.
 {¶ 5} In 1990, the appellant was criminally charged with failure to have an adult cabaret license. The appellant was ultimately acquitted of all charges. In 1998 the appellant received a complaint for an injunction filed by the City of Cleveland.
 {¶ 6} Mr. Riccardi, the Zoning administrator since 1997, testified that since 1987 he has been associated with the city and has held various positions in the Division of Building and Housing. Referencing this specific case, Riccardi stated that in his capacity as an employee of the Division of Building and Housing, he was presented with a permit application to establish an Adult Cabaret. He testified that there are no previous records establishing a permit for this business as a bar or a dance hall[4]. There are records of dance hall inspections, but no records that a dance hall permit was issued. Such a permit would have to be renewed annually. The record indicates two inspections, one in 1962 and one in 1978.
 {¶ 7} Mr. Riccardi testified that in order to establish a legal nonconforming use there must be proof that the use was existing at the time the ordinance was passed and that the use was legal at the time the ordinance was passed. The ordinance in this case requiring a permit for an adult cabaret was passed in 1989. This particular premises had some alteration permits, but no use was ever established. In order to establish whether the use was legal at the time, Mr. Riccardi would examine whether the use was permitted in the district, the parking requirements, and the landscape requirements. If the business in question was an adult cabaret before 1989, and met all of the other requirements, it would be grandfathered in as a legal nonconforming use. Mr. Riccardi determined that this was not a legal bar with entertainment in 1989. Mr. Riccardi made this determination because there was insufficient parking as required under the parking ordinance as enacted in 1971. Before a permit is issued for a dance hall there are various departments which have to sign off on the permit: Building and Housing, Division of Environment, Division of Sanitation, the Fire Department and the Public Safety Department. Evidence of two inspections is not tantamount to a permit being issued. The appellant pointed out that he had obtained a liquor permit every year since 1980.
 {¶ 8} The BZA then heard evidence from various members of the community all seeking to prohibit the use of the premises as a topless bar.
 {¶ 9} The BZA also considered the deposition testimony of Dushan Kaluznik who has been a building inspector for Cleveland since 1989. Because he was a resident of the neighborhood between 1972 and 1980, he remembers "half naked" women dancing at the bar (Kaluznik Depo. T. 16). Mr. Kaluznik testified that in 1991 the bar had go-go dancers. He referred to these dancers as "half naked" (Kaluznik Depo. T. 7). Mr. Kaluznik cited the appellant because he did not have the proper certificate of occupancy, i.e., an adult cabaret license. He visited the establishment with Tom Ardito. Mr. Kaluznik does not remember being present at the appellant's criminal trial in 1991.
 {¶ 10} Thomas Ardito is Cleveland's Chief Building Inspector. He has held this position since 1986. While he testified that in the late 1980's and early 1990's the bar was a go-go bar, he also testified that the dancers were not topless. The dancers had pasties on the top and g-strings on the bottom. He testified that on May 21, 1990, a citation was issued to the appellant for failure to have an adult cabaret certificate of occupancy (Ardito Depo. T. 23).
 {¶ 11} After the BZA issued its decision, the appellant filed an appeal with the trial court. The trial court determined that it would hear additional testimony from Dushan Kaluznik because there were some questions as to the veracity of Mr. Kaluznik at his first deposition. Mr. Kaluznik again testified that in the mid 1970's he resided in the area near the appellant's establishment. Mr. Kaluznik described the appellant's business as a "go-go place" (T. 10). However, he testified before the trial court that the dancers at Peek-A-Boos were not topless in the 1970's. He clarified his earlier testimony and stated that although he said the women were "half naked", that they had "brassiers and little things on." (T. 11). He testified that at the time the appellant was given the citation, May 1990, there was no nudity at the bar. Mr. Kaluznik testified that the appellant was given a citation for having adult entertainment without an Adult Entertainment License. The essential difference between Mr. Kaluznik's deposition testimony and his testimony given before the trial court is that, during the deposition, Mr. Kaluznik could not remember being at the appellant's criminal trial.
 {¶ 12} The appellant asserts three assignments of error. In the first assignment of error, the appellant argues that it was error for the assigned trial judge to sign an entry disposing of this case on the same day the case was returned from this appellate court. The entry signed by the trial court was identical to the impermissibly signed entry of the non-assigned judge for which this court issued a reversal. See Ksiezykv. Cleveland (Dec. 6, 2001), Cuyahoga App. No. 78881. In the first assignment of error of this present appeal, the appellant contends that the trial court failed to consider all of the evidence before it when entering its order.
 {¶ 13} In 3910 Warrensville Center, Inc. v. Warrensville Heights
(1984), 20 Ohio App.3d 220, 485 N.E.2d 824, this court found that a common pleas court need not enter findings of fact and conclusions of law in a zoning appeals case. This court found that in a zoning appeal additional evidence may be permitted, but the parties are not entitled to a trial de novo. The court found that Civ.R. 52 was not applicable and that R.C. 2506.03 does not require written findings.
 {¶ 14} Absent any requirement to file findings of fact and conclusions of law, the appellant can point to no deficit in the trial court's order. The order was in compliance with Civ.R. 54 and with R.C.2505.02. The appellant has presented no evidence that the trial court failed to consider all of the evidence before it prior to rendering its decision. This court must presume the regularity of the trial court proceedings. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199. The appellant's first assignment of error is overruled.
 {¶ 15} In the second assignment of error, the appellant asserts that the trial court erred in failing to consider the actual facts and disregarding the relevant law.
 {¶ 16} The standard of review for the court of appeals in a zoning appeal was clearly set forth in Henley v. Youngstown (2000),90 Ohio St.3d 142, 735 N.E.2d 433. The court began by noting that, in construing the language of R.C. 2506.04, the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals are distinguishable. The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03. The common pleas court then determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. Henley, citing to Smithv. Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608, 612,693 N.E.2d 219, 223, citing Dudukovich v. Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, N.E.2d 1113.
 {¶ 17} The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is more limited in scope. Henley, citing to Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848, 852. The Supreme Court has held that the court of appeals is to review the judgment of the common pleas court only on questions of law. Henley, supra. This is not the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. While it is incumbent on the trial court to examine the evidence, such is not the charge of the appellate court. Kisil, supra. The fact that the court of appeals might arrive at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so. Lorain CitySchool Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267.
 {¶ 18} Cleveland Codified Ordinance 347.07 describes adult entertainment uses and regulates location for such uses within the city. An adult cabaret is defined as a commercial establishment, including a nightclub, bar, restaurant or similar establishment, which regularly features persons who expose specified anatomical areas, or dancers, strippers or similar live entertainers in performances which are distinguished or characterized by the exposure of special anatomical areas or by the depiction or description of specified sexual activities. Specified anatomical areas includes the female breast below a point immediately above the top of the areola. An adult cabaret is considered an adult entertainment use, and is prohibited from locating within 1,000 feet of a church. C.C.O. 347.07(c)(5). C.C.O. 327.02 requires a business to obtain a certificate of occupancy prior to establishing or changing a building's use, and operating without the required certificate violates C.C.O. 327.02 and 3105.10. Provided that building and zoning requirements for the remainder of the business are satisfied, a certificate adding an adult entertainment use is authorized if the location requirements of C.C.O. 347.07(c) are met. Even if it meets the location restrictions, an adult use is still subject to criminal sanctions if it does not obtain the authorization first. See generally, Cleveland v. Daher (Dec. 14, 2000), Cuyahoga App. No. 76975.
 {¶ 19} In the case sub judice, the appellant argues that the trial court failed to properly consider the facts and disregarded the relevant law. The trial court reviewed the BZA transcript at which time evidence was introduced that the zoning ordinance requiring a permit for an adult cabaret was passed in 1989. There was evidence presented that topless dancing had occurred on the premises from the latter 1970's to the early 1980's. For example, Frank Bobsky testified the topless dancing began in the latter 1970's to the early 1980's and the appellant testified that topless dancing occurred in 1976. However, evidence to the contrary was also introduced. Commander Taskey stated it a "bikini class nightclub" but was cited for topless dancing three times between 1978 to 1981; Mr. Thomas Ardito testified that the dancers in the late 1980's to early 1990's were not topless; and Dushan Kalzunik first referred to the women as "half naked", but later clarified to the trial court that the women wore pasties and g-strings. Thus, the BZA had evidence that while there may have been, from time to time, topless dancers in Peek-A-Boos, the dancers were covered with pasties, bikinis or `brassiers' prior to 1989. The ordinance indicates that such coverage does not fall within the definition of "specified anatomical areas."
 {¶ 20} Given this evidence, the trial court could have determined that the BZA order was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. When applying the appellate standard of review, i.e., a review only on questions of law, this court finds no basis for overturning the trial court. The trial court applied the law to the facts in this case and its decision was not an abuse of discretion. The appellant's second assignment of error is overruled.
 {¶ 21} In the third assignment of error, the appellant posits that the trial court erred in disregarding the competent, credible evidence regarding the prior criminal decision of a court of competent jurisdiction. The appellant argues that the 1991 acquittal of the appellant on criminal charges of operating an adult cabaret without a permit is dispositive. The appellant variously argues that this administrative appeal is double jeopardy or res judicata/collateral estoppel.
 {¶ 22} In State v. Williams, 88 Ohio St.3d 513, 2000-Ohio-428,728 N.E.2d 342, the Ohio Supreme Court noted that the "Double Jeopardy Clause states that no person shall `be subject for the same offense to be twice put in jeopardy of life or limb.' Fifth Amendment to the United States Constitution; see, also, Section 10, Article I, Ohio Constitution. Although the Double Jeopardy Clause was commonly understood to prevent a second prosecution for the same offense, the United States Supreme Court has applied the clause to prevent a state from punishing twice, or from attempting a second time to criminally punish for the same offense. Williams citing to Kansas v. Hendricks [(1997), 521 U.S. 346,369, 117 S.Ct. 2072, 2085, 138 L.Ed.2d 501, 519], and Witte v.United States (1995), 515 U.S. 389, 396, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351,361. The threshold question in a double jeopardy analysis, therefore, is whether the government's conduct involves criminal punishment. Williams
citing to Hudson v. United States (1997), 522 U.S. 93, 101,118 S.Ct. 488, 494, 139 L.Ed.2d 450, 460."
 {¶ 23} In Hudson v. United States (1997), 522 U.S. 93;118 S.Ct. 488; 139 L.Ed.2d 450, the United States Supreme Court held that the double jeopardy clause "protects only against the imposition of multiplecriminal punishments for the same offense" (emphasis original). InHudson, the Court overruled United States v. Halper (1989) 490 U.S. 435,109 S.Ct. 1892, 104 L.Ed.2d 487 where the court had deviated from this distinction.
 {¶ 24} Thus, in the case now before this court, we find that the appellant's acquittal of criminal charges does not bar the appellee from pursuing an administrative remedy to enforce its zoning ordinances. SeeState v. Williams, 88 Ohio St.3d 513, 2000-Ohio-428, 728 N.E.2d 342
holding that where a statute is not criminal and does not impose punishment, the double jeopardy clause of the constitution is not violated.
 {¶ 25} Turning to the issue of res judicata and collateral estoppel, the Ohio Supreme Court has held that the term res judicata has several different meanings, depending on the context in which the term is used. Holzemer v. Urnabski, 86 Ohio St.3d 129, 1999-Ohio-91,712 N.E.2d 713. Historically in Ohio, res judicata, used in a narrow sense, has often been synonymous with what in the favored terminology of today, is referred to as "claim preclusion." This concept has also been identified as the rules of merger and bar. In referring to the other major component of the overall concept of former adjudication, Ohio courts in the past have frequently used the term "collateral estoppel" to describe what in the favored terminology of today is referred to as "issue preclusion."
 {¶ 26} In the matter at hand, we note that the record contains copies of the criminal complaint filed against the appellant in 1991. The appellant was criminally charged pursuant to Section 3103.99 of the Cleveland Codified Ordinances with a violation of Section 327.02(C): Illegal change and/or substitution in the use of building or premises, extension of any existing use, unauthorized occupation, failure to secure Certificate of Occupancy. Neither the BZA, the trial court, nor this court were provided with the transcript of the trial held at the Cleveland Municipal Court in case number 91 CRB 9341.
 {¶ 27} The appellant presented the trial court's notes as evidence of the content of this trial. The BZA was not required to give weight to these notes because there is no time stamp or any other indication that the notes are a part of the municipal court record nor was there testimony from the judge who wrote the notes which inform us as to the context and meaning of those notes. Perhaps, as the appellee asserted, the court was merely writing down what he heard from a witness. There is no evidence that the court was issuing a finding of fact or a conclusion of law. Thus, the only conclusion which may be drawn from this acquittal is that the appellant was found not guilty of violating Cleveland Codified Ordinance 327.02(C). There is no evidence presented in the record which indicates whether the finder of fact found that the appellant was grandfathered or found that the women dancing were actually appropriately covered or some other reason. This prior acquittal does not provide the appellant with any protection from further action by the appellee based upon zoning ordinances.
 {¶ 28} The appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
TIMOTHY E. McMONAGLE, A.J., and ANN DYKE, J., CONCUR.
[1] Mr. Ksiezyk is the sole owner of Doned, Inc. The BZA hearing transcript referred to the appellants in the singular and this court will do so for ease of reference.
[2] This court reversed and remanded the first appeal filed from the decision of the BZA because the final order was signed by a judge other than the assigned judge. See Ksiezyk v. Cleveland (Dec. 6, 2001), Cuyahoga App. No. 78881.
[3] Sections 347.07(c)(1), 347.07(c)(3), 347.07(c)(5), 347.04(e), and 347.08-11, 347.12 are sited by the zoning administrator Richard Riccardi in the denial of the permit for use as an Adult Cabaret.
[4] Before the BZA the appellant argued that since the premises was a dance hall in the 1930's, that should be sufficient to establish the use as an Adult Cabaret. This argument has not been made on appeal.